

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2008

# Biyanto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3787

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Biyanto v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1672.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1672

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3787

———————

NUR BIYANTO,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———————

On Review of a Decision of the
Board of Immigration Appeals
(Agency No.  A97 149 842)
Immigration Judge: Donald Vincent Ferlise

———————

Submitted pursuant to Third Circuit LAR 34.1(a)
December 11, 2007

———————

Before: MCKEE, CHAGARES, and HARDIMAN, Circuit Judges.

(Filed: January 30, 2008)

———————

OPINION OF THE COURT

CHAGARES, Circuit Judge:

Nur Biyanto petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). The BIA affirmed, without opinion, the decision of the Immigration Judge (IJ). The IJ found that Biyanto was not credible and denied his application for withholding of removal and relief under the Convention Against Torture (CAT).[1] Because substantial evidence supports the adverse credibility determination and denial of withholding of removal and CAT relief, we will deny the petition for review.

I.

We have jurisdiction to review the BIA's final orders of removal. 8 U.S.C. § 1252(a). Where the BIA affirms without opinion, we review the decision of the IJ. See Partyka v. Att'y Gen., 417 F.3d 408, 411 (3d Cir. 2005). Whether an alien has demonstrated past persecution, a likelihood of future persecution, or a likelihood of torture are reviewed under the substantial evidence standard, as are adverse credibility findings. See Wang v. Ashcroft, 368 F.3d 347, 349-50 (3d Cir. 2004); Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001); Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004). Under this standard, the IJ's findings of fact are conclusive "unless the evidence not only supports a contrary conclusion, but compels it." Abdille, 242 F.3d at 483-84. Minor inconsistencies regarding events central to an alien's petition do not

_____

[1] Biyanto conceded that, because his asylum application had not been timely filed, he was ineligible for asylum, and therefore sought only withholding of removal and protection under the CAT.

2

provide an adequate basis for an adverse credibility finding.  Xie, 359 F.3d at 243.

## II.

The Attorney General must grant withholding of removal if he "decides that the alien's life or freedom would be threatened" in the country of removal "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The alien bears the burden of proving that he will more likely than not face persecution on account of a protected ground.  See INS v. Stevic, 467 U.S. 407, 429-30 (1984).  If the alien can demonstrate past persecution, then that finding will raise a rebuttable presumption that the alien's "life or freedom would be threatened in the future . . . ."  8 C.F.R. § 1208.16(b)(1)(i).  Past persecution requires proof of "(1) one or more incidents rising to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed either by the government or by forces that the government is either unable or unwilling to control."  Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003).  Under our cases, "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive."  Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir.1993).  It encompasses only grave harms such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom."  Id. at 1240.

An applicant for relief under the CAT bears the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).  The standard for relief "has no subjective

3

component, but instead requires the alien to establish, by objective evidence that he is entitled to relief." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (internal quotation marks and citation omitted). Torture is an act done "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," by means of which "severe pain and suffering, whether physical or mental, is intentionally inflicted" for purposes such as obtaining confessions, punishment, intimidation, or coercion. 8 C.F.R. § 208.18(a)(1). We have held that "even cruel and inhuman behavior by government officials may not implicate the torture regulations," Sevoian, 290 F.3d at 175, because "[t]orture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2).

III.

As we write only for the parties, our summary of the facts is brief. Nur Biyanto is a native and citizen of Indonesia. He is also a Buddhist of Chinese descent. Biyanto claims to have suffered persecution in Indonesia on account of his ethnicity. In particular, he contends that four specific incidents compel findings of past persecution and a likelihood of future persecution.

The first incident occurred in July of 1997. Biyanto testified that he was driving his car and was rear-ended by a motorcycle driven by the son of a "jihad commando" leader. The police determined that Biyanto was not at fault, but a few members of the motorcycle driver's family came to Biyanto's home asking for money for medical

4

treatment of the young man's injuries. Biyanto agreed to give the family three million rupiah, but the family later demanded an additional two million rupiah for repair of the motorcycle. When Biyanto refused to pay this additional sum, a family member insulted and hit him; Biyanto eventually paid the money at the suggestion of the police.

Biyanto also testified that in September of 1997, the same group of individuals came to Biyanto's store, along with the injured motorcycle driver, and demanded that Biyanto support the injured young man with a monthly stipend. When Biyanto refused, the family members again insulted and hit him.

The next incident took place in October of 1997. Biyanto testified that he was the victim of an attempted robbery while on the way to his bank to deposit money. He alleged the two assailants included one of the individuals who had come to his store looking for money for the injured motorcycle driver.

Finally, Biyanto testified that during the widespread riots in Indonesia in May of 1998, his store was burned down and he had to hide and run away from the rioters, including individuals from the motorcycle driver's family, who chanted anti-Chinese slogans.

On cross-examination, Biyanto testified that he had not seen the motorcycle driver or the group of persons who came to his house in July 1997 before that point in time, and told the Court that he believed they were from a "jihad commando" group due only to their representations to him. He stated that he lived with his parents from May 1998 until December 1999, and that in 2001 his parents informed him that the accident victim was

5

still looking for him. The IJ determined that (1) Biyanto was not a credible witness and therefore failed to demonstrate his eligibility for withholding and protection under the CAT; and (2) even if his testimony was deemed credible, Biyanto nevertheless failed to demonstrate past persecution or that it was more likely than not he would be subject to persecution or torture if removed to Indonesia.

Because we find that there is no reason to compel a contrary conclusion, we will uphold the IJ's adverse credibility finding. The IJ deemed Biyanto's testimony not credible based on various inconsistencies and contradictions. In particular, the IJ found it highly implausible that, as Biyanto claimed, the motorcycle victim and his family would again start looking for Biyanto in 2001, four years after the accident, when they had no contact with Biyanto or his parents from May 1998 through the beginning of 1999 and Biyanto did not explain why he never mentioned that the victim was still looking for him in his affidavit. Other inconsistencies and contradictions included Biyanto's account of where he lived after the May riots and before departing for the United States in 1999 and what contact he had with the alleged jihad commandos during that time. Based on these significant inconsistencies, the IJ concluded that Biyanto was not "a credible witness, nor that he [] submitted a credible case in chief," Appendix (App.) 50, and we will decline to find differently.

Moreover, even if we assume, *arguendo*, that Biyanto was a credible witness, substantial evidence supports the IJ's denial of relief. The record does not show past persecution based on Biyanto's ethnicity, nor compel the conclusion that there is a clear

6

probability of persecution if he returns to Indonesia. As unfortunate as the demands for money and attempted robbery were, Biyanto did not offer substantial evidence tending to show that the injured motorcycle driver or his family members were motivated by an anti-Chinese animus. To the contrary, Biyanto appears to have been the victim of harassment intended to induce monetary compensation and reparation for the traffic accident. Similarly, Biyanto did not demonstrate that the attempted robbery was on account of his race instead of the fact that he was transporting a large bag of money. We therefore conclude that these incidents do not compel a finding of ethnic persecution. Moreover, while Biyanto maintains that he experienced vandalism during the 1998 riots, he cannot point to personal incidents of persecution or torture beyond the general civil unrest at that time, and this Court has not held that there is a pattern or practice of persecution against ethnic Chinese in Indonesia. See Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir. 2005). Likewise, we find that Biyanto's allegations that the motorcycle victim and his family may still be looking for Biyanto do not establish a clear probability of future persecution.

Biyanto also claims that the human-rights abuses detailed in the State Department Country Reports indicate that Biyanto will likely face persecution on account of his ethnicity. In our view, nothing in these reports compels such a finding.

Biyanto's brief does not provide any separate analysis of his CAT claim. Based on our review of the record, substantial evidence supports the IJ's determination that Biyanto does not face a likelihood of torture upon his return to Indonesia. See Lukwago v. Ashcroft, 329 F.3d 157, 182-83 (3d Cir. 2003). Accordingly, we will deny the petition

7

for review.